Filed 4/12/22  P. v. Superior Court (Solorio) CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF KINGS COUNTY,<br><br>Respondent;<br><br>ALFREDO PARAMO SOLORIO,<br><br>Real Party in Interest. | F082833<br><br>(Super. Ct. No. 20CMS-5559)<br><br>**OPINION** |

ORIGINAL PROCEEDING; petition for writ of prohibition and/or mandate; Superior Court of Kings County.  James T. LaPorte, Judge.  (Retired Judge of the Kings Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Keith L. Fagundes, District Attorney, and Stephen H. Curd, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Jacquelyn Larson, under appointment by the Court of Appeal, for Real Party in Interest.

-ooOoo-

**SEE DISSENTING OPINION**

**INTRODUCTION**

The People of the State of California, through the Kings County District Attorney, petitioned for a writ of prohibition and/or mandate, seeking to compel respondent trial court to vacate its dismissal of the prosecution of real party in interest, Alfredo Paramo Solorio, who was charged with offenses including driving under the influence (Veh. Code, § 23152, subd. (a)), and with a blood-alcohol content over 0.08 percent (Veh. Code, § 23152, subd. (b)), both alleged to be felonies due to having occurred within 10 years of three or more qualifying prior convictions (Veh. Code, § 23550). We previously issued an order to show cause and now grant the writ petition.

**FACTUAL AND PROCEDURAL HISTORY**

The record before us is limited, but the relevant facts are undisputed.[1] Solorio was arrested on June 8, 2019, in relation to an alleged incident of driving under the influence (DUI).[2] He was arraigned on the information on December 1, 2020. He ultimately was charged in a second amended consolidated information with felony driving under the

---

[1] The People's petition was supported only by a transcript of the April 8, 2021 hearing at which the case was dismissed. Subsequently, in lieu of briefing in reply, the People filed the complaint, first amended complaint, information, first amended consolidated information, and second amended consolidated information. They also filed a transcript of an April 5, 2021 trial readiness hearing, and a minute order for same. We do not rely on these belatedly filed documents to resolve the issues before us. (See *Donorovich-Odonnell v. Harris* (2015) 241 Cal.App.4th 1118, 1141 [" ' " ' "Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission." ' " ' "].) Nonetheless, we refer to some of the facts established in these documents for background purposes.

[2] The record does not reflect whether Solorio remained in continuous custody from June 8, 2019, until the April 8, 2021 dismissal of the action. On April 8, 2021, the probation officer stated on the record that Solorio had accrued 660 days of actual credit. However, custody from June 8, 2019, to April 8, 2021, would constitute 671 days. It is not apparent from the record whether this was a miscalculation, or whether Solorio was out of custody for some period.

influence (Veh. Code, §§ 23152, subd. (a), 23550; count 1), felony driving with a blood-alcohol content over 0.08 percent (Veh. Code, §§ 23152, subd. (b), 23550; count 2), misdemeanor resisting arrest (Pen. Code, § 148, subd. (a)(1); count 3), and misdemeanor driving with a suspended license while under the influence of alcohol (Veh. Code, § 14601.2, subd. (a); count 4). As to counts 1 and 2, the People alleged Solorio refused to take a chemical test and had a blood-alcohol concentration in excess of 0.15 percent (Veh. Code, § 23578).

During the course of the proceedings, all the sitting judges in the county either recused themselves or were disqualified from hearing the case.

The parties eventually appeared before Judge James LaPorte, a retired judge sitting on assignment, for a trial readiness conference on April 5, 2021. At the conference, defense counsel moved to dismiss on the ground that March 29, 2021, was "the last day to bring [the case] to trial."[3] The court stated "pandemic continuances[4] would necessitate a good cause determination." The court ultimately noted that, due to disqualifications, "[t]here wasn't any other judge to hear the case" and, on that basis, found good cause for the prior continuance. Trial remained set for April 26, 2021.

On April 8, 2021, the parties again appeared before Judge LaPorte for a pretrial conference. At the outset of the hearing, defense counsel represented he was ready to

---

[3] Counsel stated, "[B]ut actually I want to make a motion today that actually *as we previously provided to the Court* under the current 29th of last month was the last day to bring it to trial." (Italics added.) To the extent this suggests counsel brought a motion to dismiss prior to the April 5, 2021 conference, the record establishes it was not heard or decided until Judge LaPorte was assigned to the case because the judges who sat on the case on March 29, 2021 were recused or disqualified.

[4] The reference to "pandemic continuances" apparently refers to a series of orders issued by the Governor of California, the Chief Justice of the California Supreme Court, and the Presiding Judge of the Kings County Superior Court, which permitted the extension of time within which certain proceedings must be conducted. (See, e.g., *Bullock v. Superior Court* (2020) 51 Cal.App.5th 134, 141-143 [describing similar orders applicable in Contra Costa County].)

proceed to trial, but had just then been handed the People's motion to continue.[5]  The prosecutor who appeared at the hearing, who was not the prosecutor assigned to the case, represented that a necessary witness was unavailable for the trial date, and the People therefore were seeking to either *advance* the trial date to April 19, 2021, *or continue* it to May 3, 2021.  The People also were amenable to releasing Solorio on his own recognizance pending trial.

The court stated:

"Okay, can we back up?  The problem we're having is that everybody has papered everybody, and all you have is a visiting judge, assuming you even get a visiting judge for the case.  Assuming that is true, hasn't Mr. Solorio already served all the time he could serve on this case?"

Defense counsel agreed that Solorio had already served all possible time on the case, and further argued the People had known about their witness's prepaid vacation since December.  The People represented they had only learned of the vacation on April 5, 2021.

The court again queried whether Solorio had served the maximum possible time on his case and the appearing prosecutor stated his understanding that Solorio had not.  The court stated, "That is not the presentation [the assigned prosecutor] made on Monday."[6]  The appearing prosecutor then stated he "honestly [did] not know if [Solorio was] timed out."

Defense counsel argued:

"[T]he Court just [previously] made a finding of good cause based on the fact we didn't have a judge.  [The People h]ad just filed a motion to continue two days before that saying they had officers unavailable for those dates.  Now instead of setting it out for four or five days we set it out 30

<hr>

[5] The motion apparently was not filed and it is not contained in the record.

[6] The transcript of the April 5, 2021 hearing does not reflect any such representation by the prosecutor in this regard, however it appears some matters were discussed off the record.

4.

days, and now the People want to set it out further. I am going to renew my motion to dismiss."

The People pointed out that they were seeking to *advance or continue* trial. The court noted it could not hear a motion that had not been properly served. The People stated that they had just provided a copy of the motion to defense counsel and stated, "We don't know whether or not Mr. Solorio is released or not." The following colloquy ensued:

"THE COURT: I am trying to release him today.

"[PROSECUTOR]: Yes, your Honor.

"THE COURT: Why can't we release Mr. Solorio today, because he doesn't want to be released?

"[DEFENSE COUNSEL]: Mr. Solorio says he doesn't want to be released, but that doesn't mean the Court can't order him released from custody."

The court queried whether Solorio had somewhere to go if released. Solorio represented that he did, but that he did not "want to sign a promise to appear." Solorio explained that he might not return to court later if required to do so because he had been unemployed, had no money for bus fare, and did not wish to walk to court.[7]

The court queried how long Solorio had been in jail and, when informed that he had been in custody since 2019, stated, "[H]e wouldn't get three years even with a DUI, even a felony." The probation officer noted Solorio had 660 days of actual credit, and 660 days of conduct and work credit, for a total of 1,320 days' credit. The prosecutor conceded, "That is a lot, your Honor." The following discussion ensued:

"THE COURT: What is your motion?

"[DEFENSE COUNSEL]: Move to dismiss.

"THE COURT: 1385?

---

[7] These are the same reasons Solorio provided for declining release on April 5, 2021.

"[DEFENSE COUNSEL]: Yes.

"THE COURT: So granted. Now, what?

"[PROSECUTOR]: We object to that. The defendant did commit a crime.

"THE COURT: And he has now already served more time than he would get on the normal felony, even if he got convicted on it. [¶] . . . [¶] . . . He spent three years in custody."

The People filed their petition for a writ of prohibition and/or mandate on May 28, 2021.

## DISCUSSION

"A writ of mandate, or mandamus, is an extraordinary writ known at common law. The writ of mandate lies generally to compel performance of a legal duty . . . ."[8] (*People v. Mena* (2012) 54 Cal.4th 146, 153 (*Mena*); accord, Code Civ. Proc., § 1085.) "[R]eview by writ is at the discretion of the reviewing court." (*Mena*, at p. 153.)

We first consider whether the People may challenge the dismissal by way of writ petition. We conclude the People have the right to challenge the dismissal by either appeal or petition for writ of mandate and, for reasons we explain, we exercise our discretion to intervene in the instant case.

With respect to the issue identified in our order to show cause, we conclude the trial court clearly abused its discretion in dismissing the action. Accordingly, we will grant the writ petition and direct the trial court to vacate its order of dismissal.

---

**8** The People sought a writ of prohibition and/or mandate. The writ of prohibition operates to restrain or prevent judicial action in excess of jurisdiction. (Code Civ. Proc., § 1102; *Citizens Utilities Co. v. Superior Court* (1963) 59 Cal.2d 805, 813.) In contrast, mandamus operates to compel action. (Code Civ. Proc., § 1085.) Here, the People seek to compel the trial court to reverse or vacate its dismissal of the action. Accordingly, we conclude the writ of mandate is appropriate.

6.

## I.      The Dismissal is Appealable

"As a general rule, the People may not seek an extraordinary writ in circumstances where the Legislature has not provided for an appeal." (*People v. Superior Court (Vidal)* (2007) 40 Cal.4th 999, 1008.)  "The prosecution's right to appeal a criminal matter is strictly limited by statute." (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1294.)  Penal Code section 1238, subdivision (a)(8) grants to the People the statutory right to appeal an order dismissing all or any portion of an action entered before the defendant has been placed in jeopardy.  Accordingly, the trial court's order of dismissal is appealable by the People and, as a consequence, the People may seek an extraordinary writ.  (*Vidal*, at p. 1008.)

## II.      The People Have No Adequate Alternative Remedy

To obtain writ relief, the People must demonstrate:  "no 'plain, speedy, and adequate' alternative remedy exists." (*People v. Picklesimer* (2010) 48 Cal.4th 330, 340; see Code Civ. Proc., § 1086 ["The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law."].)  "[I]t must be determined in each case, not only on the basis of precedent but from an examination of all the facts, whether there is an adequate remedy in the ordinary course of law." (*Rescue Army v. Municipal Court* (1946) 28 Cal.2d 460, 466 (*Rescue Army*).)

Absent extraordinary circumstances, an appeal typically constitutes an adequate remedy at law.  (*People v. Loper* (2015) 60 Cal.4th 1155, 1167; *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 112-113 (*Powers*).)  " 'The discretionary aspect of writ review comes into play primarily when the petitioner has another remedy by appeal and the issue is whether the alternative remedy is adequate.' " (*Mena*, *supra*, 54 Cal.4th at p. 153; accord, *Powers*, at p. 113; *Rescue Army*, *supra*, 28 Cal.2d at pp. 466-467.)

Even where an appeal is available, "the Supreme Court has repeatedly recognized the intervention of an appellate court [by way of writ review] may be required to consider instances of a grave nature or of significant legal impact, or to review questions of first

impression and general importance to the bench and bar where general guidelines can be laid down for future cases.  In such cases, the statutory requirement of inadequacy of appellate remedy may have been relaxed in favor of immediate review of a question of statewide importance so that lower decisions in other cases will be uniform." (*Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 129, fns. omitted (*Hogya*); accord, *Rescue Army*, *supra*, 28 Cal.2d at pp. 466-467; *Anderson v. Superior Court* (1989) 213 Cal.App.3d 1321, 1328 (*Anderson*).)  Additionally, while "[a] remedy is not inadequate merely because more time would be consumed by pursuing it through the ordinary course of law than would be required in the use of the extraordinary writ"[9] (*Rescue Army*, at p. 466), courts have utilized writ review where the facts and circumstances of a case require prompt resolution (*Rescue Army*, at p. 467; *Kaulick*, *supra*, 215 Cal.App.4th at p. 1296; *Anderson*, at p. 1328).

With these principles in mind, we conclude our intervention is warranted here.  An appeal would not provide a speedy and adequate resolution to the People's challenge to the dismissal order.  The dismissal interfered with the People's right to prosecute Solorio for offenses of which the court determined there is probable cause to believe he is guilty.  Some of these offenses carry collateral consequences beyond imprisonment, including revocation of the convicted offender's privilege to operate a motor vehicle and designation of him or her as a habitual traffic offender.  (Veh. Code, § 23550, subd. (a).)  Society, as represented by the People, has an interest in the fair prosecution of these crimes.  (*People v. Orin* (1975) 13 Cal.3d 937, 946-947 (*Orin*).)  These are but some of

---

[9] This rule historically was justified on the ground review by appeal is " 'almost as speedy as a writ proceeding.' " (*Mitchell v. Superior Court* (1950) 98 Cal.App.2d 304, 304; accord, *Phelan v. Superior Court* (1950) 35 Cal.2d 363, 370, fn. 3 [difference in time between the calendaring of writs and appeals "should not exceed 90 days in any case"].)

the reasons the People have an interest in the prompt resolution of this criminal proceeding on the merits.

The public interest is best served by a more expeditious resolution than that available by way of appeal. As such, we conclude our intervention is warranted.

## III. The Dismissal Constituted a Clear Abuse of Discretion

Mandamus is appropriate where the issue presents " ' " 'a clear, present . . . ministerial duty on the part of [the court].' " ' "[10] (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1296.) Thus, writ relief generally is not available to control a lower court's discretionary decisions. (*Taliaferro v. Locke* (1960) 182 Cal.App.2d 752, 755; *People v. Municipal Court (Kong)* (1981) 122 Cal.App.3d 176, 180.) Nonetheless, while "a writ of mandate ordinarily cannot compel the exercise of discretion in a particular manner, a writ of mandate can compel a particular act if the failure to act in that manner was a clear abuse of discretion." (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1181; see *People v. Superior Court (Stanley)* (1979) 24 Cal.3d 622, 626 [mandate not available for challenge to judicial decision making, but may be available to challenge court's authority to make such decisions].)

The dismissal of an action in furtherance of justice under Penal Code section 1385 is a matter committed to the sound discretion of the trial court. (*People v. Carmony* (2004) 33 Cal.4th 367, 373.) However, as we explain, the dismissal in this matter constituted a clear abuse of discretion, and we conclude the trial court was under a legal duty to permit the prosecution to proceed. Accordingly, the court may be directed to perform that duty by writ of mandate. (See *Hogya*, *supra*, 75 Cal.App.3d at p. 131.)

---

[10] Mandamus also generally requires a " ' " 'clear, present and beneficial right in the [People] to the performance of that duty.' " ' " (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1295.) The People plainly have "a legitimate interest in 'the fair prosecution of crimes properly alleged.' " (*Orin*, *supra*, 13 Cal.3d at p. 947.)

9.

The trial court's discretion to dismiss an action in furtherance of justice is not absolute. (*People v. Superior Court (Montano)* (1972) 26 Cal.App.3d 668, 670.) Furthermore, "[a]n order of dismissal is a matter of public concern" and, in considering a dismissal under Penal Code section 1385, the court must consider whether the dismissal acts in furtherance of justice, not just for the criminal defendant, but also for society, as represented by the People. (*Ibid.*) "[A]ppellate courts have shown considerable opposition to the granting of dismissals under [Penal Code] section 1385 in instances where the People are thereby prevented from prosecuting defendants for offenses of which there is probable cause to believe they are guilty as charged. Courts have recognized that society, represented by the People, has a legitimate interest in 'the fair prosecution of crimes properly alleged.' [Citation.] ' "[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion." ' " (*Orin*, *supra*, 13 Cal.3d at pp. 946-947.)

Here, the trial court dismissed the prosecution on the ground Solorio had already served all the time in custody he could have served if convicted.[11] As all parties now agree, this assessment was inaccurate. Solorio had not yet served the maximum term of four years that could have been imposed had he been convicted on all counts and had the court found circumstances in aggravation to warrant both the upper term and consecutive sentencing.

_____

[11] The record does not reflect the motion was granted on speedy trial grounds based on March 29, 2021, being the last date to bring the case to trial. Judge LaPorte denied Solorio's motion to dismiss on that basis and Solorio did not challenge that ruling. Judge LaPorte's statements on April 8, 2021, reflect concern only with Solorio's time in custody. However, to the extent the record suggests the dismissal may also have been motivated by issues of court congestion or judicial convenience associated with disqualification of the entire county bench, the dismissal nonetheless constituted an abuse of discretion. "[I]n view of the fundamental right of the People to prosecute defendants upon probable cause to believe they are guilty [citations], neither judicial convenience, court congestion, nor judicial pique, no matter how warranted, can supply justification for an order of dismissal." (*People v. Johnson* (1984) 157 Cal.App.3d Supp. 1, 8.)

10.

Even if we assume, for purposes of this petition, that the court's concern with Solorio's prolonged confinement was warranted in this case,[12] the dismissal constituted a clear abuse of discretion. The court was presented with two reasonable options to address what it viewed as Solorio's excessive period in custody, both of which would have preserved the People's interest " ' " 'in seeing that cases in which it believes a conviction is warranted are tried . . . .' " ' " (*Orin*, *supra*, 13 Cal.3d at pp. 947-948.) First, the court could have released Solorio on his own recognizance. Defense counsel acknowledged the court had the power to order Solorio released despite Solorio's own reluctance. Moreover, Solorio does not cite, and we do not find, authority for the proposition that a defendant may simultaneously refuse release on his own recognizance, while also demanding dismissal of a prosecution on the ground his confinement is excessive. Indeed, to state the proposition is to refute it.

Second, whether or not the court ordered Solorio released, the court could have advanced the trial date from April 26, 2021, to April 19, 2021, as proposed by the People. Due to the bare nature of the record, it is not clear whether the People's request for continuance would have resulted in a trial date outside the statutory time limits for bringing a case to trial under Penal Code section 1382. If the requested continuance was within those limits, it is beyond question that the dismissal would have constituted a clear abuse of discretion under both Penal Code sections 1382 and 1385. (*People v. Ferguson* (1990) 218 Cal.App.3d 1173, 1183; *People v. Kessel* (1976) 61 Cal.App.3d 322, 325-326.) Regardless, the People alternatively sought to advance the trial date, and defense counsel represented that he was ready to proceed to trial. Accordingly, the People provided the court with a reasonable alternative to dismissal that would have had no

---

[12] The court seemingly opined that the maximum term was an unlikely outcome, although the basis for this opinion is not apparent from the minimal record before us.

apparent detriment to Solorio, particularly if he were released on his own recognizance. (See *People v. Henderson* (2004) 115 Cal.App.4th 922, 938-939.)

We additionally note the Legislature has proscribed procedures for addressing the court's concern that Solorio's time in custody may have exceeded his sentence. Penal Code section 2900.5 provides for the allocation of a defendant's custody credits. (*Ibid.*) Custody credits must first be credited to the defendant's term of imprisonment. (*Id.*, subd. (a).) "If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served." (*Ibid.*) Additional excess custody credits then are applied against the defendant's period of parole, if any. (*Id.*, subd. (c); accord, *People v. Morales* (2016) 63 Cal.4th 399, 406 [noting, pursuant to Pen. Code, § 2900.5, that excess custody credits "can reduce or eliminate the period of parole"].) Finally, excess custody are applied to reduce or eliminate any base fine imposed as part of the sentence. (Pen. Code, § 2900.5, subd. (a).) The Legislature has not provided for dismissal of an action on the ground that a defendant's custody credits exceed the sentence that may be imposed.

In sum, advancing the trial date and/or releasing Solorio on his own recognizance would have obviated the concerns that led the court to conclude dismissal was warranted, and would have led to resolution of the matter without infringing on the rights of the People. Instead, the trial court chose a course contrary to the adversary nature of criminal procedure, and terminated the prosecution of a defendant for a crime properly charged. There can be no question that such decision constituted an abuse of discretion. (*Orin*, *supra*, 13 Cal.3d at p. 947; *People v. Superior Court (Schomer)* 13 Cal.App.3d 672, 680.)

In light of the foregoing, we will grant the People's petition.

## DISPOSITION

The petition for writ of prohibition and/or mandate is granted. Let a writ of mandate issue directing the trial court to vacate its order of dismissal, and to conduct such

further proceedings as may be appropriate and consistent with the views expressed herein.

                                                  DETJEN, J.

I CONCUR:


LEVY, Acting P. J.

13.

PEÑA, J., Dissenting.

I respectfully dissent from the conclusion and reasoning of the majority opinion to grant the petition for writ of mandate.

## INTRODUCTION

The People of the State of California, through the Kings County District Attorney, petitioned for a writ of prohibition and/or mandate, seeking to compel respondent trial court to vacate its dismissal of the prosecution of real party in interest Alfredo Paramo Solorio. The petition is lacking in many respects, three of which are fatal to the relief sought. First, the petition fails to allege, let alone establish, that the remedy of appeal is inadequate. Second, it fails to provide an adequate record to support its allegations and conclusions or to permit meaningful review. Third, many of the petition's allegations are disputed by the real party in interest in his return, which makes various counter allegations, none of which are disputed by petitioner in their reply. Consequently, the petition fails to carry its burden of demonstrating the court abused its discretion by dismissing the matter.

## DISPUTED AND UNDISPUTED ALLEGATIONS

Rather than attempt to summarize the allegations in the petition, I quote them in their entirety:

"The real party in interest was charged by way of a Complaint on September 10, 2019 for violations of Vehicle Code section 23152(a) within the meaning of Vehicle Code section 23550 and 23152(b) within the meaning of Vehicle Code section 23550 (Driving while under the influence of alcohol, a felony by way of three prior misdemeanor driving while under the influence of alcohol convictions); a special allegation under Vehicle Code section 23578 for refusal of a chemical test as well as excess blood alcohol; Penal Code section 148(a)(1) (Resisting arrest); Vehicle Code section 14601.2(a) (Driving with a suspended license for driving while under the influence of alcohol).

"The real party in interest was arraigned on the Information on December 1, 2020. Jury trial dates were set and reset many times due to

the COVID pandemic and Kings County being unable to do jury trials. The Honorable Judge, Michael Reinhart held the defendant to answer following a preliminary hearing held on November 17, 2020. Petitioner filed an Information on December 1, 2020. Petitioner filed a First Amended Consolidated information on December 29, 2020.

"On April 8, 2021, the real party in interest requested a dismissal pursuant to Penal Code Section 1385. The Honorable Judge, James LaPorte dismissed the case without hearing from Petitioner and issued his ruling granting defendant's Motion on March 4, 2020 [*sic*]. (Exhibit A, Reporter's Transcript of Pretrial Conference, hereinafter, 'Pretrial Transcript.)"

In addition, the petition provides a "summary of facts" unsupported by any exhibits or other records in this case, such as the preliminary hearing evidence, so it is improper to include it here. In any event, a summary of the alleged facts is unnecessary to resolve the limited issues presented by the parties.

In his return to the petition, Solorio admits, denies, and alleges as follows:

"1. Solorio admits and alleges that in case number 20CM-5559, Solorio was charged by complaint in Kings County Superior Court. (Exh. 1 [online docket of case no. 20CM-5559, last accessed Oct. 14, 2021].)

"2. Solorio admits and alleges that the District Attorney's office filed an information in case number 20CM-5559, and a First Amended Consolidated Information in case number 20CMS-5559. (Ptn., p. 5; see Exh. 1, and Exh. 2 [online docket of case no. 20CMS-5559, last accessed Oct. 14, 2021].) Solorio has been unable to ascertain the exact dates of the latter filing.

"3. Solorio admits and alleges that the First Amended Consolidated Information in case number 20CMS-5559 charged Solorio in count 1, with driving under the influence of alcohol in violation of Vehicle Code section 23152, subdivision (a), a felony pursuant to Vehicle Code section 23550; in count 2, with driving with a blood alcohol level of over 0.08 percent in violation of Vehicle Code section 23152, subdivision (b), a felony pursuant to Vehicle Code section 23550; in count 3, with resisting arrest under Penal Code section 148, subdivision (a)(1), a misdemeanor; and in count 4 with driving with a suspended license in violation of Vehicle Code section 14601.2, subdivision (a), a misdemeanor. (Ptn., pp. 4-5.)

2.

"4. Solorio generally denies the criminal allegations in the Petition's Summary of Facts. (Ptn., pp. 5-6.)

"5. Solorio alleges he has pleaded not guilty to the facts as stated in the Petition's Summary of Facts, and these facts have not been admitted by Solorio nor determined to be true by any finder of fact.

"6. Solorio admits and alleges he was arrested on June 8, 2019. (Ptn., pp. 5-6.)

"7. Solorio admits and alleges he was in custody until April 8, 2021, at which date the probation officer stated on the record that Solorio had accrued 660 days of actual credit and 660 days of work credit, for a total of 1,320 days credit.

"8. Solorio admits and alleges that on April 8, 2021, the real party in interest requested the superior court to dismiss case 20CMS-5559 pursuant to Penal Code Section 1385. (Ptn., p. 5, Exh. A.)

"9. Solorio denies that the Honorable Judge, James LaPorte dismissed the case without hearing from petitioner. (Ptn., p. 5.)

"10. Solorio denies that the Honorable Judge, James LaPorte had 'next to no information about [Solorio]'s personal background, prospects, or character.' (Ptn., p. 11.) Solorio alleges that Judge LaPorte presided at a trial readiness hearing on April 5, 2021, three days before the judge decided to dismiss the case. (Exh. 2.) The petition did not include a copy of the reporter's transcripts of that hearing.

"11. Solorio alleges that the Honorable Judge LaPorte dismissed the case after considering the prosecution's motion to further move the trial, considering the charges and the status of the case, and after considering the detriment to Solorio, including that Solorio had accrued actual and credit days for over three years and seven months. (Ptn., Exh. A.)

"12. Solorio alleges that on May 28, 2021, the petitioner filed a petition for writ of prohibition and/or mandate, requesting this Court to overturn the superior court's dismissal of the action, and remand for further proceedings. (Ptn., pp. 14-15.)

"13. Solorio admits and alleges that the Kings County Superior Court's dismissal of the case pursuant to Penal Code section 1385 is a final judgement [*sic*], appealable by the People pursuant to Penal Code section 1238, subdivision (a)(8). (Ptn., p. 7.)

3.

"14.  Solorio alleges that on September 16, 2021, this Court issued an order to show cause why the relief prayed for by petitioner should not be granted.

"15.  Solorio alleges that the petitioner failed to supply an adequate record.

"16.  Solorio alleges that the petitioner has an adequate remedy at law through a direct appeal.

"17.  Solorio alleges that the superior court did not err in dismissing case 20CMS-5559 pursuant to Penal Code section 1385.  The record demonstrates that the superior court's decision to dismiss the case was not an abuse of discretion.

"18.  Except as expressly admitted herein, Solorio denies, generally and specifically, each allegation of the petition, and specifically denies that the superior court erred in dismissing case 20CMS-5559 pursuant to Penal Code section 1385."  (Fn. omitted.)

As mentioned, petitioner filed a reply but did not deny any of Solorio's allegations in the return, did not otherwise respond to Solorio's contentions, and made no further arguments in support of the petition.  The reply merely attached additional documents, specifically those Solorio had pointed out were missing from the record on review (the omission of which he had alleged was fatal to the petition).

Of direct and indispensable import to our review is the reporter's transcript of a proceeding conducted on April 5, 2021.  This transcript reveals at least partial information about the trial court's knowledge of the history of the case and Solorio, which undoubtedly informed the court's decision to grant the motion to dismiss at the next hearing of April 8, 2021.  But it is what is *not* revealed about the history of this proceeding by the meager record before us that is most troubling and preclusive of our ability to determine whether the trial court abused its discretion.

With this backdrop, I consider the issues raised by the parties.

**ISSUES AND CONTENTIONS RAISED BY THE PARTIES**

Petitioner makes two arguments: (1) "the court is required to state the reasons for the dismissal on the record, taking into consideration the real party in interest's current crime, background, character, and prospects" and (2) "the court failed to consider and failed to state on the record the reasons for the dismissal." (Capitalization and boldface omitted.) Solorio makes the following contentions: (1) writ relief is not appropriate where the People have an adequate remedy at law; (2) the petitioner did not supply an adequate record for a complete understanding of the case and the ruling under review; and (3) the superior court properly dismissed the case under Penal Code section 1385. (Undesignated statutory references are to the Penal Code.)

**DISCUSSION**

**I.     Petitioner Has an Adequate Remedy at Law**

A writ of mandate "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.) "Although the statute does not expressly forbid the issuance of the writ if another adequate remedy exists, it has long been established as a general rule that the writ will not be issued if another such remedy was available to the petitioner. [Citations.] The burden, of course, is on the petitioner to show that he did not have such a remedy." (*Phelan v. Superior Court* (1950) 35 Cal.2d 363, 366; accord, *People v. Picklesimer* (2010) 48 Cal.4th 330, 340.)

As noted in the majority opinion, the "'discretionary aspect of writ review comes into play primarily when the petitioner has another remedy by appeal and the issue is whether the alternative remedy is adequate.' [Citations]." (*People v. Mena* (2012) 54 Cal.4th 146, 153.) My colleagues and I agree there is an available remedy under section 1238, subdivision (a)(8), which authorizes the People to appeal from an order of dismissal entered before the defendant has been placed in jeopardy. We disagree about

5.

whether this remedy has been shown to be inadequate. In my view, petitioner falls well short of making the necessary showing.

"'A remedy by immediate direct appeal *is presumed to be adequate*, and a party seeking review by extraordinary writ bears the burden of demonstrating that appeal would not be an adequate remedy under the particular circumstances of that case.' [Citation]." (*People v. Loper* (2015) 60 Cal.4th 1155, 1167.) The presumption is not rebutted "merely because more time would be consumed by pursuing [relief] through the ordinary course of law than would be required in the use of an extraordinary writ." (*Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 128; accord, *Rescue Army v. Municipal Court* (1946) 28 Cal.2d 460, 466.) An available remedy may be inadequate when "it is clear that [the] matter requires speedy resolution." (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1296.) But petitioner herein does not even allege urgent circumstances, much less the requisite "facts showing they have no other plain, speedy, or adequate remedy at law." (*Pich v. Lightbourne* (2013) 221 Cal.App.4th 480, 491.)

Nowhere in the petition, including the points and authorities, does petitioner claim the inadequacy of available remedies. To be clear, the petition is devoid of *any* discussion of the requirements for obtaining writ relief. It is a writ petition in name only, as it reads like an ordinary appellant's opening brief. Petitioner even includes a "Statement of Appealability," citing section 1238, subdivision (a)(8) as the basis for the "appeal." This did not go unnoticed by Solorio, who alleges in paragraph 16 of his return "that the petitioner has an adequate remedy at law through a direct appeal." In the reply to the return, petitioner continues to ignore the issue. It is unclear to me why the majority opinion fails to acknowledge or even mention this fatal deficiency. (See *People v. Loper*, *supra*, 60 Cal.4th at p. 1167 [presumptive adequacy of direct appeal must be rebutted by petitioner]; see also *Inyo Citizens for Better Planning v. Inyo County Bd. of Supervisors* (2009) 180 Cal.App.4th 1, 14 ["We do not serve as 'backup appellate counsel,' or make the parties' arguments for them"].)

6.

The case of *People v. Superior Court* (*Mowry*) (1971) 20 Cal.App.3d 684 (*Mowry*) is on point. There, as here, a trial court had dismissed a criminal case "'in the interest of justice'" pursuant to section 1385. (*Mowry*, at p. 686.) The People sought "to review and reverse that action by a petition for a writ of mandate." (*Id*. at p. 687.) The appellate court held mandamus was "not an appropriate remedy" since the order was directly appealable "under subdivision 8 of [former] section 1238," which was substantively identical to current section 1238, subdivision (a)(8). (*Mowry*, at p. 687; see *People v. Superior Court* (1970) 5 Cal.App.3d 698, 701 ["In 1968 the Legislature amended … section 1238 by adding subdivision 8, which provides that an appeal may be taken by the People, 'From an order or judgment dismissing or otherwise terminating the action before the defendant has been placed in jeopardy or where the defendant has waived jeopardy'"].)

My colleagues suggest older cases like *Mowry* have limited value since direct appeals were historically "'"almost as speedy as a writ proceeding."'" (Maj. opn., *ante*, at p. 8, fn. 9.) I would again note petitioner's failure to allege urgent circumstances. Furthermore, any discussion of expediency begs the question of why petitioner did not simply refile the charges against Solorio. (See § 1387.) It may be that refiling was not an option, but the petition is silent on the issue. We should not just assume the unavailability of this (second) alternative remedy. (See *Duke v. Superior Court* (2017) 18 Cal.App.5th 490, 498 ["a petitioner generally must show his or her remedy in the ordinary course of law is inadequate or that the petitioner would suffer irreparable injury were the writ not granted"].)

It is true "the statutory requirement of inadequacy of appellate remedy may [be] relaxed in favor of immediate review of a question of statewide importance," or in cases "of a grave nature" and/or those presenting issues of first impression. (*Hogya v. Superior Court*, *supra*, 75 Cal.App.3d at p. 129, fns. omitted.) The majority opinion, however, justifies writ review in this case on grounds of (1) the People's right to prosecute charges

supported by probable cause and (2) the "collateral consequences" of a successful prosecution.  (Maj. opn., *ante*, at pp. 8–9.)

Citing *People v. Orin* (1975) 13 Cal.3d 937, the majority opinion contends society has an interest in the prosecution of the charges against Solorio.  The *Orin* case states, in relevant part: "[A]ppellate courts have shown considerable opposition to the granting of dismissals under section 1385 in instances where the People are thereby prevented from prosecuting defendants for offenses of which there is probable cause to believe they are guilty as charged.  Courts have recognized that society, represented by the People, has a legitimate interest in 'the fair prosecution of crimes properly alleged.'  [Citation.]  '"[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion." [Citations.]'"  (*Id*. at pp. 946–947.)

Any relevance *Orin* has to the present matter is in relation to petitioner's abuse of discretion claim, not the adequacy of petitioner's available remedies.  The opinion does not suggest that a direct appeal is an inadequate remedy for erroneous dismissals under section 1385.  Indeed, the *Orin* case involved a People's appeal taken pursuant to section 1238, subdivision (a)(8).[1]  (*People v. Orin*, *supra*, 13 Cal.3d at p. 940.)

The "collateral consequences" of a successful prosecution is equally irrelevant to the issue of petitioner's available remedies.  My colleagues imply the delays associated with an appeal may have public safety ramifications.  They seemingly assume Solorio

---

[1]The *Orin* case is also factually distinguishable.  There, a trial court abused its discretion by dismissing two of three felony counts, ostensibly pursuant to section 1385, "solely because defendant had pleaded guilty to the third count."  (*People v. Orin*, *supra*, 13 Cal.3d at p. 942.)  The *Orin* defendant had proposed a plea bargain that the trial court viewed as fair and appropriate but which the prosecutor had refused to accept.  The case holds, inter alia, that a trial court "has no authority to substitute itself as the representative of the People in the negotiation process   and under the guise of 'plea bargaining' to 'agree' to a disposition of the case over prosecutorial objection."  (*Id*. at p. 943.)  This was the context in which the high court later discussed society's "legitimate interest in 'the fair prosecution of crimes properly alleged'" and supported by probable cause.  (*Id*. at p. 947.)

will be found guilty as charged, and the collateral consequences (e.g., revocation of driving privileges) will prevent or deter future recidivism. Setting aside the lack of authority for granting writ review on such grounds, the argument ignores the fact Solorio is already a repeat offender and was charged below with driving on a suspended license.

If the majority opinion is relying on a "grave nature" rationale (*Hogya v. Superior Court*, *supra*, 75 Cal.App.3d at p. 129), the evidentiary support is missing. The record indicates Solorio has essentially "timed out," i.e., accrued custody and conduct credit exceeding the maximum potential period of actual incarceration. The People were thus amenable to releasing him from custody pending trial. Rushing to get this matter back on a trial track is not going to make any difference because Solorio will remain out of custody.

Since writ relief will not lessen the risk of recidivism, the possibility of Solorio reoffending is not a valid reason for our discretionary intervention. The cause does not raise questions of first impression, nor does it appear to have "general importance to the bench and bar where general guidelines can be laid down for future cases." (*Hogya v. Superior Court*, *supra*, 75 Cal.App.3d at p. 129.) The petition should therefore be denied.

## II.     Petitioner Has Not Furnished an Adequate Record

A party seeking extraordinary writ relief "must provide the appellate court with a record sufficient to permit such review." (*Sherwood v. Superior Court* (1979) 24 Cal.3d 183, 186.) "To be adequate, such a record should ordinarily include any written motion and opposition thereto together with their respective points and authorities, any relevant pleadings or reporter's transcripts, and any written dispositive order." (*Id.* at pp. 186–187; accord, Cal. Rules of Court, rule 8.486(b).) The record before us is missing several of these items.

Although the petition refers to a "judgment entered pursuant to the Superior Court's order granting the Penal Code section 1385 Motion," the document has not been provided. We have no written orders corresponding to the granting of Solorio's motion

to dismiss, nor any related motion papers. Also missing is the minute order and reporter's transcript for the proceedings of March 29, 2021, as well as other records pertaining to earlier continuances of the trial date. (See further discussion, *post*.)

The majority opinion acknowledges the "limited" nature of the record but contends "the relevant facts are undisputed," thereby implying all relevant facts are known to us. (Maj. opn., *ante*, p. 2, fn. omitted.) I am not convinced. Scrutiny of petitioner's contentions and the record provided indicate there are significant evidentiary omissions.

### A. Transcript of April 8, 2021

Petitioner's central argument, made without citation to supporting authorities, is as follows: "The court did not state the reasons for the dismissal as required by LAW. In reviewing the record in a light most favorable to the court, it is a reasonable inference the court dismissed the case because it believed it unfair that the real party in interest had timed out on the case and was still in custody."[2] To support this contention, petitioner quotes extensively from the court proceedings of April 8, 2021. The reporter's transcript of this hearing was initially the only evidence proffered in support of the petition.

At first glance, the transcript is supportive of petitioner's above-quoted argument. Despite questioning the adequacy of the record from the outset, we chose to issue an order to show cause. This occurred because the petition, and transcript excerpts quoted therein, gave the impression the trial court had reactively invited the motion to dismiss under section 1385 solely because of Solorio's lengthy incarceration. Here is an example:

> "THE COURT: He has been in custody for a DUI since 2019?
>
> "[DEFENSE COUNSEL]: Correct.
>
> "[PROSECUTOR]: Multiple DUIs, your Honor.

---

[2]The full capitalization of the word "law" is neither a helpful nor proper substitute for citation to legislative or decisional authority.

10.

"THE COURT: That is fine, but he wouldn't get three years even with a DUI, even a felony.

"[DEFENSE COUNSEL]: Understood, your Honor. At his sentencing on the misdemeanor he had just under a 1,000 days credit. As to the misdemeanor he has been in custody the same time as to both, and that ended in December of last year. It would be an additional four months on top of that, and another 200 something days. His total served is in excess of 1,100, almost 1,200 days.

"THE COURT[, addressing the probation officer]: [D]o you have any information on that?

"THE PROBATION OFFICER: Yes, your Honor. As of today's date the defendant has 660 actual, 660 good and work, for a total of 1,320 days.

"THE COURT[, addressing the prosecutor]: … 1,320 days.

"[PROSECUTOR]: That is a lot, your Honor.

"THE COURT: What is your motion?

"[DEFENSE COUNSEL]: Move to dismiss.

"THE COURT: 1385?

"[DEFENSE COUNSEL]: Yes.

"THE COURT: So Granted."

On closer inspection, it is apparent the motion to dismiss was a pending or renewed motion. The April 8 hearing was a follow-up proceeding relative to an April 5 readiness/confirmation hearing vis-à-vis the scheduled trial date of April 26, 2021. The April 8 hearing began with the defense stating its readiness for trial. Immediately thereafter, defense counsel said, "I was just handed like three seconds ago a document entitled People's motion to continue jury trial dated 4/26/21." Later on, after a defense objection to the continuance motion was sustained, Solorio's attorney said: "I am going to *renew* my motion to dismiss." (Italics added.)

The petition alleges the trial court "dismissed the case before Petitioner could even object." However, as evidenced by defense counsel's use of the word "renew," this was

11.

not an impromptu motion triggered by the court's remarks about Solorio's time credits. The issue had previously been raised, but the surrounding circumstances are not discernable from the lone exhibit to the petition.

## B.	Transcript of April 5, 2021

Solorio's return argues petitioner did not provide an adequate record.  Petitioner has responded by submitting, inter alia, the reporter's transcript of the April 5 hearing. My colleagues opine this document need not be considered "to resolve the issues before us." (Maj. opn., *ante*, at p. 2, fn. 1.)  However, the transcript suggests (1) Solorio's trial was continued numerous times for various reasons and (2) the continuances went past the time out date for trial of an incarcerated defendant.  It also reveals Solorio had filed a motion to dismiss alleging a due process violation of his right to a speedy trial.  Defense counsel orally renewed that motion at the April 5 hearing before the judge who eventually granted the motion on April 8.  The colloquy was as follows:

> "[DEFENSE COUNSEL:]  I want to make a motion today that actually as we previously provided to the Court under the current 29th of last month was the last day to bring it to trial.  It has been continued[.]  I move to dismiss for a violation of my client's due process rights.
>
> "THE COURT:  The problem is you know the pandemic continuances would necessitate a good cause determination.
>
> "[DEFENSE COUNSEL]:  Correct.
>
> "THE COURT:  Which is what the Court is required pretty much to do in exercising the discretion, but he shouldn't be in custody anymore.  And if he wants to deal with it today, I can deal with it today.
>
> "[DEFENSE COUNSEL]:  And, correct, I don't believe there is good cause to have continued it past—
>
> "THE COURT:  I understand that.
>
> "[DEFENSE COUNSEL]:  —past the date or whatever.  And the People were moving to continue the matter because they had unavailable witnesses just days prior to they didn't proceed on.  And when my client exercised his

under 170.6 we were then transferred to Judge Edwards. The People didn't exercise it knowing that it would exceed the date."

As I read the transcript, defense counsel had filed a written motion to dismiss, which he had "previously provided to the Court," arguing March 29, 2021, was "the last day to bring [the case] to trial." Counsel was renewing the earlier motion or reasserting the underlying arguments.[3] As the hearing of April 5 progressed, the parties and the trial court discussed the events of "[l]ast Monday," i.e., March 29, and defense counsel seemed to be arguing the trial should not have been continued to April 26, 2021. The trial court remarked, "It sounds like last [Monday] there wasn't any judge available to even start a trial, so based upon that— [¶] … [¶] … the Court would find good cause [for the previously ordered continuance]."

Again, the limited record indicates defense counsel had been moving to dismiss the action prior to Judge LaPorte's involvement in the case. As the majority opinion concedes, "it appears some matters were discussed off the record" at the hearing of April 5, 2021. (Maj. opn., *ante*, p. 4, fn. 6.) By April 8, 2021, given Judge LaPorte's presumptive access to the case file (including the prior written motion to dismiss), the judge likely had a clearer picture of the surrounding circumstances than we do. In any event, it is apparent the trial court did not rule in a vacuum based on a few comments at the April 8 hearing. The petition implies otherwise, which misled this court to issue the order to show cause. For these reasons, I conclude petitioner has failed to provide documents "necessary for a complete understanding of the case and the ruling under

---

[3]At footnote 3 of the majority opinion, my colleagues declare the record "establishes" that any prior motion to dismiss "was not heard or decided until Judge LaPorte was assigned to the case …." I am not aware of any definitive proof in this regard. It is not contained in the exhibit to the petition, and a separate footnote states that no other records have been relied upon "to resolve the issues before us." (Maj. opn., *ante*, at p. 2, fn. 1.) If anything, the incomplete record requires us to speculate about what actually occurred prior to Judge LaPorte's involvement in the case.

review." (Cal. Rules of Court, rule 8.486(b)(1)(C).) Therefore, the petition should be denied on this additional ground.

### III. The Limited Record Fails to Demonstrate an Abuse of Discretion

The majority opinion, at pages 9–10, accurately summarizes the law and the standard of review for section 1385 dismissal orders. It is unnecessary to restate those authorities here. Suffice to say I do not share my colleagues' view that the record establishes a "clear abuse of discretion."

As set forth in part II of my Discussion, the limited record prevents us from knowing all the circumstances the trial court may have considered in assessing the interests of justice in this case. If petitioner's evidence showed the dismissal was solely based upon the amount of time Solorio had served as of April 8, 2021, I would agree the trial court's discretion was abused. However, the transcript of the April 5 hearing shows the motion to dismiss relied on other grounds. In fact, both motions made by defense counsel in front of Judge LaPorte were renewed or continuing motions alleging the People's failure to bring the matter to trial within the statutory time limits and/or excessive delays violated Solorio's due process rights.

Defense counsel informed Judge LaPorte a motion to dismiss had been provided to the court in relation to the proceedings of March 29, 2021. Defense counsel argued the continuance granted on March 29 violated the time limitations for commencement of the trial. When the People did not answer ready for the trial date of April 26 at the April 8 hearing and instead attempted to file a motion to change the date, defense counsel renewed the motion to dismiss. It seems unreasonable to me to conclude Judge LaPorte had forgotten the arguments made at the April 5 hearing or was unaware or unconcerned about the People's continuing attempts to change the trial date well past the time out date of March 29 (or earlier, depending on what the missing record revealed), while Solorio remained in custody.

14.

The majority opinion reasons Judge LaPorte had already rejected defense counsel's speedy trial arguments at a prior hearing, and therefore the judge's remarks on April 8 "reflect concern only with Solorio's time in custody." (Maj. opn., *ante*, at p. 10, fn. 11.) But the motion granted on April 8 was a "renewed" motion. This implies a reassertion of previously made arguments and a challenge to Judge LaPorte's earlier ruling in light of the changing circumstances.

I am also unpersuaded by my colleagues' emphasis on the People's offer to advance the trial date. While conceding it is unknown when the section 1382 deadline for bringing the case to trial expired, the majority opinion assumes the proposal to commence trial on April 19, 2021, was "a reasonable alternative to dismissal." (Maj. opn., *ante*, at p. 11.) However, there is no evidence defense counsel or the trial court were capable of beginning trial on that day. Defense counsel stated his availability to begin trial on April 26, 2021, not one week earlier.

For the above reasons, I cannot agree the record establishes the court abused its discretion by granting the motion to dismiss the case in the interests of justice.[4]

PEÑA, J.

---

[4]Although petitioner's missteps have been numerous in this case, the majority opinion inexplicably latches onto a single misstep it perceives as the basis for the trial court's ruling—that the court dismissed the matter solely because of Solorio's excessive time in custody. To the extent additional factors motivated the trial court's decision to dismiss the action, which I strongly suspect is the case, upon reinstatement of the action in the superior court, the court is well within its prerogative and broad discretion to again dismiss the action in the interests of justice under section 1385. If the court chooses to do so, however, for purposes of appellate review, the court should provide a more complete and comprehensive statement of its reasons for doing so.